# F O R   P U B L I C A T I O N

lml/jar

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

In re:

PATRICIA JOAN MERRIMAN,                          Case No. 03-4121-JAR

                                                 Bankruptcy Case No. 01-42851-13

                        Debtor.

_____

PATRICIA JOAN MERRIMAN,

                        Plaintiff,

v.                                               Adv. No. 01-7142

BENEFICIAL MORTGAGE CO. OF
KANSAS, INC.,

                        Defendant.

_____

## MEMORANDUM AND ORDER

This is an appeal from an order of the bankruptcy court relating to a debtor's right

to rescind a home mortgage transaction for disclosure violations under the Truth in Lending Act (the

"TILA") and resulting statutory damages.  For the reasons set forth below, the decision of the

bankruptcy court is affirmed.

**I.      Background**

The relevant facts are not disputed.  In August 2000, Patricia Merriman entered into a non-

purchase money loan transaction with  Beneficial Mortgage Company of Kansas, Inc. ("Beneficial"),

for $30,359.45 that was secured by a mortgage on her home.  The transaction between Merriman and

Beneficial was subject to Merriman's right of rescission as described by

§ 1635 of the TILA[1] and Regulation Z.[2]  Beneficial gave Merriman the appropriate loan information

disclosures required by the TILA, and gave her at least one copy of a form called a "Notice of Right to

Cancel" ("Notice").  The Notice was a "hybrid" form of Beneficial's own design, which was drafted

with alternative paragraphs in a "check-the-box" format.  Neither of the alternative paragraphs had its

corresponding box checked.

     In October 2001, Merriman filed a Chapter 13 bankruptcy proceeding.  On November 21,

2001, Merriman's bankruptcy attorney sent correspondence to Beneficial stating that Merriman  was

exercising her right to rescind the loan transaction under the TILA.  Beneficial took no action on

Merriman's notice of rescission.

     On December 18, 2001, Merriman filed an adversary proceeding against Beneficial in her

pending Chapter 13 bankruptcy case seeking relief under the TILA, including rescission of the loan

transaction and the imposition of statutory damages against Beneficial.  The bankruptcy court entered

an order granting summary judgment in this case and a companion case, *Marcelino Ramirez, et al. v.

Household Finance Corporation III (In re Ramirez)*, Adversary No. 01-7122 ("the Order").[3]

     The bankruptcy court addressed three issues in the Order.  First, the parties disputed whether

---

[1]15 U.S.C. § 1635.

[2]12 C.F.R. § 226.23.

[3]An appeal of the *Ramirez* portion of the order is also pending before this Court, Case No. 03-4122-JAR.

2

Beneficial had given Merriman two copies of the Notice.  The bankruptcy court refrained from deciding this issue of fact, and assumed that Beneficial had provided Merriman with only *one* copy of the Notice. The bankruptcy court determined that Beneficial's assumed failure to provide Merriman with *two* copies of the Notice did not extend the date by which Merriman could rescind the transaction.  The bankruptcy court further determined, however, that Beneficial's failure to check a box on the Notice constituted inadequate notice to Merriman, such that the rescission period was extended to three years, pursuant to 15 U.S.C. § 1635(a).

Second, the bankruptcy court determined that rescission of the loan was appropriate and that the court was authorized to modify the parties' respective reciprocal tender obligations under § 1635.  Thus, the bankruptcy court concluded that Beneficial did not have to terminate its security interest and that the amount Merriman owed Beneficial as a result of the rescission, was secured by Beneficial's mortgage lien until paid.  Finally, the bankruptcy court determined the amount of civil damages due Merriman based on Beneficial's improper notice and rescission response pursuant to 15 U.S.C. § 1640.

Merriman filed a Notice of Appeal with respect to the Order and Beneficial filed a Cross-Appeal.  Beneficial subsequently withdrew its appeal.[4]

## II.    Appellate Jurisdiction

The parties have opted to have the appeal heard by this Court.[5]  The appeal was timely filed by the debtor, and the bankruptcy court's Order is "final" within the meaning of 28 U.S.C.

---

[4]Case No. 03-4120 (Doc. 9).

[5]*See* 28 U.S.C. § 158(c); B.A.P. 10th Cir. R. 8001-1(a), (d).

§ 158(a)(1).[6]

### III.    Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court.[7]  The

standards generally governing review of the bankruptcy court's decision are well-settled: findings of fact

are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo*.[8]  A finding is

clearly erroneous if it is unsupported by any facts of record or if the district court, after reviewing all the

evidence, is left with the definite and firm belief that a mistake was made.[9]

### IV.    Discussion

Merriman raises five issues on appeal addressing whether the bankruptcy court: (1) erred in

holding that the rescission period was not extended from three days to three years by virtue of the

lender's failure to provide the debtor with two copies of the Notice describing her right to rescind the

transaction; (2) erred in failing to award her twice the amount of any finance charge in connection with

the transaction, with a maximum award of $2,000, for each violation of the TILA, and by reducing the

amount owed Beneficial by that amount; (3) had discretion to condition or modify the consequences of

a debtor's rescission as specified in the TILA and Regulation Z; (4) was required to first find that

Regulation Z is an irrational interpretation of the TILA before it could condition or modify the debtor's

---

[6]*See* Fed. R. Bankr. P. 8001-8002.

[7]*See* 28 U.S.C. § 1334(a).

[8]*Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849, 851 (10th Cir. 1990); *In re Barber*, 191 B.R. 879, 882 (D. Kan. 1996); *see* Fed. R. Bankr. P. 7052, 8013.

[9]*Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1536 (10th Cir. 1990).

remedy after a proper exercise of her right to rescind the transaction; and (5) erred by refusing to void the lender's mortgage on the debtor's home.

***TILA Disclosures and Remedies***

Congress enacted the TILA to regulate the disclosure of the terms of consumer credit transactions in order "to aid unsophisticated consumers and to prevent creditors from misleading consumers as to the actual costs of financing."[10]  Disclosure allows consumers to compare different financing options and their costs.[11]  Indeed, the TILA recognizes that in the marketplace of lending and financing, consumers should be armed with the appropriate information to make beneficial and sound decisions about the sources and terms of financing arrangements.  To encourage lender compliance, TILA violations are measured by a strict liability standard, so even minor or technical violations impose liability upon the creditor.[12]  The consumer-borrower can prevail in a TILA suit without showing that he or she suffered any actual damage as a result of the creditor's violation.[13]

In TILA transactions such as this, involving non-purchase-money loans secured by consumer-borrowers' homes, the borrower has a right to rescind the transaction, established by TILA § 1635. The right to rescind continues for three days so long as the lender gives the borrower the disclosures required by the TILA and a notice of the right to rescind; the right is extended up to three years if the lender fails to give the disclosure and notice.  Section 1635(a) provides in relevant part:

> Except as otherwise provided in this section, in the case of any consumer credit

---

[10]*Morris v. Lomas & Nettleton Co.*, 708 F. Supp. 1198, 1203 (D. Kan. 1989) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363-69 (1973)).

[11]15 U.S.C. § 1601(a).

[12]*See, e.g., Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of [the TILA and Regulation Z] be absolutely complied with and strictly enforced").

[13]*Herrera v. First N. Sav. & Loan Ass'n*, 805 F.2d 896, 900 (10th Cir. 1986).

transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, **the obligor shall have the right to rescind the transaction** until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, **by notifying the creditor, in accordance with regulations of the Board, of his intention** to do so.  The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section.  The **creditor shall also provide**, in accordance with regulations of the Board, **appropriate forms for the obligor to exercise his right to rescind** any transaction subject to this section.[14]

### A.        Number of Copies of Notice Provided to Merriman

Regulation Z states that a lender "shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind."[15]  The bankruptcy court concluded that it need not decide whether Beneficial had supplied Merriman with one or two copies of this Notice.  Rather, the bankruptcy court held that the second physical copy of the Notice was not actually necessary to inform Merriman of her right to rescind; thus, her right to rescind the transaction was not extended on this basis.[16]  The bankruptcy court further stated that while Regulation Z's requirement that two copies be provided to the borrower is probably not irrational, it would be irrational to extend the rescission period to three years, simply because the borrower did not receive the extra copy of the Notice.[17]

Ultimately, the bankruptcy court concluded that irrespective of the number of copies provided

[14]15 U.S.C. § 1635(a) (emphasis added).

[15]12 C.F.R. § 226.23(b)(1).

[16]*Order* at 11-12.

[17]*Id.* at 12.

to Merriman, the Notice was insufficient because none of the alternative paragraphs was marked with a checked box, and that this justified an extension of the rescission period to three years.  Because the bankruptcy court found a TILA violation based on this insufficiency, this Court need not reach, on appeal, the issue of the effect of providing one, rather than two copies of the Notice.[18]

### B.      Calculation of Civil Damages for the Notice and Rescission Violations

The bankruptcy court found that Beneficial violated the TILA in two ways: (1) in failing to provide adequate disclosure to Merriman of her rescission rights by not checking a box on the Notice (the "Notice Violation"); and (2) in failing to respond to Merriman's notice of rescission within 20 days (the "Rescission Violation").  The bankruptcy court imposed the minimum damages allowed by § 1640(a)(2)(A)(iii), awarding $200 for each violation for a total of $400, and reduced Beneficial's post-rescission claim against Merriman by that amount.  Merriman contends that the bankruptcy court erred, because it was required to award her the maximum $2,000 in statutory damages for each violation of the TILA.  Merriman further argues that the civil damages due as a result of the Rescission Violation should be paid in cash by Beneficial, rather than credited against the post-rescission claim due Beneficial.

#### 1.  Amount Awarded

Under TILA § 1640(a)(2)(A)(iii), statutory damages may be awarded to Merriman for the TILA disclosure and rescission violations discussed above.  That section provides in pertinent part:

> Except as otherwise provided in this section, any creditor who fails to

---

[18]Specifically, the bankruptcy court held that the unmarked alternative paragraph in Beneficial's  "hybrid" Notice form was not sufficient notice of her right to rescind under the mandates of the TILA.  *Order* at 12-14. Beneficial dismissed its cross-appeal, and the parties do not dispute this issue.

> comply with any requirement imposed under this part, including any
> requirement under section 1635 of this title, or part D or E of this
> subchapter with respect to any person is liable to such person in an
> amount equal to the sum of –
>> (1) any actual damage sustained by such person as a
>> result of the failure;
> [and]
>> (2)(A) . . . (iii) in the case of an individual action relating
>> to a credit transaction not under an open end credit
>> plan that is secured by real property or a dwelling, not
>> less than $200 or greater than $2,000; . . . [19]

In light of "the substantial reduction of Beneficial's claim as a result of the offsets," the bankruptcy court imposed the minimum penalty for these violations, for a total of $400, which it credited against Beneficial's claim against Merriman.[20]

Merriman argues that § 1640 must be read to require a court to award double the "finance charge" as used in subparagraph (i) or the maximum amount set forth in subparagraph (iii), in order to determine the amounts properly assessed under subparagraph (iii).  Beneficial argues that the bankruptcy court had authority to exercise its discretion to award damages between $200 and $2,000.[21]

The Court agrees with Beneficial.  There is no ambiguity as to how statutory damages should be awarded in this case.  Subparagraph (iii) plainly states that damages "not less than $200 or greater

---

[19]15 U.S.C. § 1640(a)(2)(A)(iii).

[20]*Order* at 23-24.

[21]Beneficial argues alternatively, in footnote 2 of its brief, that Merriman's claim for damages related to the Notice violation is barred by the applicable statute of limitations.  Beneficial did not preserve a statute of limitations affirmative defense in the bankruptcy court proceedings, and will not be allowed to raise it here, for the first time, on appeal.  Moreover, Beneficial's argument ignores the second sentence of 15 U.S.C. § 1640(e), which permits Merriman to recover statutory penalties "as a matter of defense by recoupment," which is not barred by the statute of limitations.

than $2,000" may be awarded.  The plain language of subparagraph (iii) imposes no obligation to impose the lesser of : (1) the maximum penalty under (iii), or (2) double the "finance charge" under (i). The bankruptcy court's award was consistent with that provision and is affirmed.

    2.  *Manner of Payment*

    Merriman's corollary issue is that the bankruptcy court improperly set off or recouped the statutory damages assessed against Beneficial for its Rescission Violation.  Merriman concedes that the Notice Violation award was properly set off against Beneficial's post-rescission claim.  But, Merriman argues that the Rescission Violation damages cannot be set off against Beneficial's claim because the claims do not arise out of the same transaction or occurrence.

    Beneficial's failure to respond to Merriman's notice of rescission of the loan transaction within 20 days from the date of its receipt of the notice gave rise to a claim against Beneficial under § 1635(g).[22]  It is that claim that resulted in the bankruptcy court's assessment of a civil damage award pursuant to § 1640.  Merriman argues that while the claim against Beneficial for the Rescission Violation arose post-petition on December 13, 2001, Beneficial's claim against her for the mortgage loan proceeds arose pre-petition, at the time the loan was made in August 2000, and thus set off or recoupment is inappropriate.  The Court disagrees.

    Generally, recoupment, while similar to setoff, is a separate, equitable doctrine that is not

---

[22]15 U.S.C. § 1635(g) provides, "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind."

subject to the setoff provisions and limitations of section 553 of the Bankruptcy Code.[23]  Rather, a creditor is allowed to "recoup" its claim against the debtor or the bankruptcy estate so long as the claims of creditor and debtor arise out of the "same transaction," without regard to the timing and mutuality restrictions of setoff.[24]  Beneficial's post-rescission claim as determined by the bankruptcy court did not arise in August 2000; it arose at the same time and as part of the same transaction that Merriman's claim arose.  Under § 1635(b), Merriman was obligated to tender property to Beneficial upon her rescission of the loan and after Beneficial had returned all costs and interest.  As recognized by the bankruptcy court, the parties had "reciprocal payment obligations under the TILA and § 1635(b) and Regulation Z § 226.23(d)(2) and (3)."[25]  Merriman's claim for damages accrued as a part of the Rescission Violation and Beneficial's claim for the reciprocal payment obligation arose out of the same transaction, that is, Merriman's rescission.  Accordingly, the obligations were in fact part of the same transaction for purposes of recoupment, and the bankruptcy court properly exercised its discretion to deduct the Rescission Violation damages from the post-rescission balance due Beneficial. The bankruptcy court is affirmed as to this issue.

### C.      Voiding of Security Interest Under the TILA

In TILA transactions such as this, § 1635(a) creates the right of rescission; § 1635(b) explains the effect that rescission has on the consumer-borrower and lender.  In short, upon rescission, the

---

[23]11 U.S.C. § 553.  Setoff is allowed where (1) the debts involved are between the same parties standing in the same capacity, (2) the debts are valid and enforceable, and (3) the debts are mutual, though they need not arise out of the same transaction. *In re Davidovich*, 901 F.2d at 1533.  In the bankruptcy context, the claims must be pre-petition debts. *In re Peterson Distrib., Inc.*, 82 F.3d 956, 963 (10th Cir. 1996).

[24]*Davidovich*, 901 F.2d at 1537; *Peterson Distrib.*, 82 F.3d at 959.

[25]*Order* at 21.

borrower is not liable for any finance or other charge, and any security interest given by the borrower becomes void.[26]  After giving Beneficial notice of rescission and receiving no response, Merriman filed an adversary proceeding in bankruptcy court, seeking rescission and damages.  The bankruptcy court ordered that the $5206.09 in closing costs and fees Beneficial charged Merriman, plus all amounts paid on the loan since the closing, $3,981.84, for a total of $9,187.93, be subtracted from the principal amount of the loan, $30,359.45, leaving a balance of $21,171.52 due Beneficial.

Merriman contends that the bankruptcy court erred in ordering that this balance would remain secured by Beneficial's mortgage lien until paid.  Merriman argues that § 1635(b) mandates that the security interest become void upon rescission, such that the balance due is unsecured and subject to compromise, discharge, or both in the Chapter 13 bankruptcy proceeding.  Merriman argues that § 1635(b) mandates the voiding of the security interest irrespective of the borrower's payment of the principal balance due.  Section 1635(b) provides:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon rescission.  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.  If the creditor has delivered any property to the obligor, the obligor may retain possession of it.  Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.  Tender shall be made at the location of the property or at the residence of the obligor, at the

---

[26]15 U.S.C. § 1635(b).

option of the obligor.  If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. **The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.**[27]

Merriman suggests that the plain language of § 1635(b) effects a voiding of the security interest upon the giving of notice of rescission.  The statute does not state, however, that the security interest becomes void upon the giving or receipt of notice.  Rather, the statute states that the security interest "becomes void upon rescission."  Nothing in the statute suggests that giving notice of rescission is synonymous with "upon rescission."  Section 1635(b) expressly becomes operative "[w]hen an obligor exercises his right to rescind under subsection (a) . . . ."  Section 1635(a) goes on to provide that "the obligor shall have the right to rescind...by notifying the creditor . . . of his intention to do so . . . . .  The creditor shall also provide . . . appropriate forms for the obligor to exercise his right to rescind . . . ."  Read together, these two subsections of § 1635 provide that the borrower exercises her right to rescind by giving notice; but the security interest becomes void only upon rescission.  The plain language of the statute indicates that exercising the right to rescind is a discrete event; and rescission is a separate discrete event.   If the drafters intended for exercise of the right to rescind to be rescission, they would not have used different terms for the same event.[28]

---

[27]15 U.S.C. § 1635(b) (emphasis added).

[28]*See Qwest Commc'ns Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1232-33 (10th Cir. 2005) (Explaining that generally, when Congress includes a specific term in one provision of a statute, but excludes it in another, it is presumed that the term does not govern the sections in which it is omitted) (citations omitted).  The Court sees no reason to disturb this cannon of statutory construction here.

Nor does the language of Regulation Z,[29] the statutory mandate for courts to act with respect to the TILA, support Merriman's argument that the security interest is void upon notice or the exercise of the right to rescind.  Regulation Z mirrors § 1635(b) and details the rescission process.[30]  Whereas the statute states that the security interest becomes "void upon rescission," Regulation Z states that the security interest becomes void "[w]hen a consumer rescinds a transaction."  Although this language in the regulation is less than clear, it does not indicate that a "consumer rescinds" merely by exercising the right to rescind through notice.  As Judge Crow noted in *Quenzer v. Advanta Mortgage Corp. U.S.A. (In re Quenzer)*,[31] rescission does not mean an annulment that is definitively accomplished by unilateral pronouncement.[32]

---

[29]12 C.F.R. § 226.23(d).

[30]**Sec. 226.23(d) Effects of rescission.**

> (1)   When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (2)   Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3)   If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section.  When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.  At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business.  If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.
>
> (4)   The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

[31] 288 B.R. 884 (D. Kan. 2003) ("*Quenzer III*").

[32] *Id*. at 888 (citing *Ray v. Citifinancial, Inc.*, 228 F.Supp. 2d 664 (D. Md. 2002)).

14

In *Yamamoto v. Bank of New York*,[33] the Ninth Circuit rejected the very argument that Merriman makes here, that the notice of rescission had the automatic and immediate effect of voiding the loan transaction.  The Ninth Circuit observed that the borrower was essentially arguing that rescission could be accomplished automatically upon a borrower's decision to rescind, communicated by a notice of rescission, and without regard to whether the law permits her to rescind upon the grounds asserted.[34]  The court noted that, "this makes no sense when, as here, the lender contests the ground upon which the borrower rescinds."[35]  "Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any."[36]

The First Circuit has observed under similar circumstances that "[n]either the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract."[37]  This occurs either because the lender acknowledges that the right of rescission is available or because the appropriate decision maker has so determined.[38]  Of course, in this case Beneficial challenged the right to rescission, taking the position that it gave adequate disclosure

---

[33]329 F.3d 1167 (9th Cir. 2003).

[34]*Id*. at 1172.

[35] *Id*.

[36]*Id*.

[37]*Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002); c*f. Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1141-42 (11th Cir. 1992) (noting that rescission is automatic, but rejecting the argument that § 226.23(d)(4)'s lack of reference to subsection (d)(1) restricts a court's ability to impose conditions that run with the voiding of a lender's security interest upon terms that are equitable).

[38]*Large*, 292 F.3d at 54-55.

under TILA, an issue adjudicated in the adversary proceeding in bankruptcy court.

Although the bankruptcy court declined to void Beneficial's mortgage lien, it invited this Court to reverse that decision, in part because the bankruptcy court agreed with Merriman's position that the security interest was void before, and irrespective of, the seriatim obligations of borrower and lender and borrower's payment obligation, spelled out in § 1635(b) and Regulation Z.[39]  As discussed above, because the plain language of § 1635(b) and Regulation Z demonstrates that rescission is not automatic upon the exercise of the right to rescind by giving notice, this Court affirms, in part because the mortgage lien was not automatically void upon Merriman giving notice to Beneficial.

### D.  Conditioning Voiding of Security Interest on Payment

Merriman contends that the bankruptcy court had no authority to condition the voiding of Beneficial's mortgage lien on Merriman satisfying her obligation to pay Beneficial the principal balance due.  Noting that the district court had previously reversed the bankruptcy court on this issue in *Quenzer III*,[40] the bankruptcy court stated that it felt constrained to follow the district court on this issue as well, but invited this Court to reverse, in favor of Merriman's position.  This Court affirms the bankruptcy court's decision, concluding, as Judge Crow concluded in *Quenzer III*, that a court has authority to condition voiding of the security interest on satisfaction of payment by the borrower.

Similar to her analysis concerning when the security interest becomes void, Merriman argues

---

[39] In finding that Beneficial's mortgage lien was not void, Bankruptcy Judge James A. Pusateri stated that he felt "constrained to follow" District Judge Crow's decision in  *Quenzer III*, which reversed Judge Pusateri's decision on these same issues. *See* 266 B.R. 760 (Bankr. D. Kan. 2001) ("*Quenzer I*"); 274 B.R. 899 (Bankr. D. Kan. 2001) ("*Quenzer II*").

[40] 288 B.R. at 884.

that the language of § 1635(b) and Regulation Z mandates the voiding of the security interest and

precludes judicially imposed conditions or modifications.  Merriman contends that language in the

statute and regulation concerning court ordered modifications to the rescission process does not apply

to the voiding of the security interest.  The last sentence of § 1635(b) states, "[t]he procedures

prescribed by this subsection shall apply except when otherwise ordered by a court."[41]  Merriman

contends that the voiding of the security interest is not a "procedure," but is substantive relief accorded

by this statute.  Regulation Z states in pertinent part, "[t]he procedures outlined in paragraphs (d)(2)

and (3) of this section may be modified by court order."  Merriman contends that this language means

that the court may modify only the lender's obligation to return money in § 226.23(d)(2) and the

borrower's obligation to tender money or property in § 226.23(d)(3), but the court may not modify the

voiding of the security interest in

§ 226.23(d)(1).

The premise of Merriman's position is that the voiding of the security interest is substantive

relief accorded by § 1635(b) and Regulation Z, rather than a procedural step in the rescission process.

Indeed, in inviting this Court to reverse its decision, the bankruptcy court urged that the voiding of a

lender's security interest is substantive and punitive, a consequence of the lender's violation of the

TILA.  The voiding of the security interest, however, is but a step in the rescission process; it is not the

substantive relief, nor is it punitive.  Rather, the TILA's express punitive measures are that the lender

---

[41]15 U.S.C. § 1635(b) (emphasis added).  In 1980, Congress amended § 1635 by adding the last section to
subsection (b), specifically giving the courts authority to change at least part of what happens when the borrower
rescinds.  *See* Truth in Lending Simplification and Reform Act, Title VI of Depository Institutions Deregulation and
Monetary Control Act of 1980, Pub. L. No. 96-221, § 612(a)(4), 1980 U.S.C.C.A.N. (94 Stat.) 132, 175 (hereinafter
"TILA Simplification Act").

loses its finance charges for the period of time that the borrower enjoyed the loan proceeds or property, which can range from three days to three years, and that the lender be subject to a fine for each violation. The voiding of the security interest is neither punitive in design nor effect.

Rescission, whether statutory or common law, is an equitable remedy. Its relief, in design and effect, is to restore the parties to their pre-transaction positions. The TILA authorizes the courts to apply equitable principles to the rescission process. As the court observed in *Quenzer III*, within the context of the TILA, rescission is a remedy that restores the *status quo ante*.[42] And, as the Eleventh Circuit noted in *Williams v. Homestake Mortgage Co.*,[43] the last sentence of § 1635(b), which states that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court," is a reflection of this equitable goal.[44] The Eleventh Circuit further observed, "[t]he sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission," which "place[s] the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission."[45] The TILA's statutory rescission procedures do not alter the equitable nature of the rescission remedy, nor the goal of returning the parties most nearly to the position they held prior to entering into the transaction.[46]

Merriman's focus on the voiding of the security interest as a substantive, punitive measure is

---

[42]288 B.R. at 888.

[43]968 F.3d 1137 (11th Cir. 1992).

[44]*Id*. at 1140.

[45] *Id.* (quoting Note, *Truth-in-Lending: Judicial Modification of the Right of Rescission*, 1974 Duke L.J. 1227, 1234 (1974)).

[46]*Id*.

largely based on the TILA provision that the security interest becomes void, and the Regulation Z provision that within 20 days after receiving notice of rescission, the lender must return money or property to the borrower and "take any action necessary to reflect the termination of the security interest."[47]  Merriman argues that the seriatim reciprocal obligations of lender and borrower provided in the statute and fleshed out in Regulation Z, make clear that the lender must take steps to terminate the security interest *before* the borrower is required to tender money or property to the lender.  Indeed, the lender's obligation to return money or property (i.e., the finance charge) and take action to reflect termination of the security interest is found in § 226.23(d)(2) of Regulation Z, while the borrower's payment obligation comes later, in § 226.23(d)(3).

The order of reciprocal obligations, however, is not indicative that the voiding of the security interest is substantive.  Rather, this order of reciprocal obligations serves to place the borrower who seeks rescission in a position to obtain financing from another lender.  Indeed, as the Eleventh Circuit has observed, TILA's rescission process places the borrower in a stronger position than under traditional rules of rescission.[48]  The TILA requires the lender to return the finance charge and take steps to terminate the security interest first, before requiring the borrower to pay off the principal balance.  This allows the borrower to seek a new loan, having the benefit of cash in the amount of the refunded finance charge, which might be used for loan fees or charges.  And, the borrower has property to pledge as security to the new lender, unencumbered with a lien from the rescinded lender, because the TILA requires the lender to terminate its security interest.  With these benefits accorded

---

[47]12 C.F.R. § 226.23(d)(2).

[48]*Williams*, 968 F.3d at 1140.

under TILA's rescission process, the borrower has the means to obtain a new loan, and thus the means to repay the principal balance due on the rescinded loan.

The TILA recognizes, in effect, that a borrower who wishes to rescind a loan may not have the means to repay the principal balance of the loan without first securing new financing.  The TILA's requirement that the lender terminate the security interest before the borrower pays off the principal balance due, simply recognizes the reality that a consumer-borrower rescinding a loan, may need alternative financing to pay off that loan.

This underlying consideration, to allow the borrower the means to obtain financing to pay off the rescinded loan, is further illustrated in Regulation Z's placing time limits on the lender's obligations, but no time limit on the borrower's obligation to repay the principal balance due.  Regulation Z § 226.23(d)(2) requires that upon receiving notice of rescission, within 20 days the lender must refund all finance charge and fees and take action to terminate the security interest, yet the next seriatim obligation, the borrower's obligation to tender the principal balance due in § 226.23(d)(3), has no time limit.  This is surely in recognition that the borrower needs time to obtain alternative financing.  Section 226.23(d)(3) requires the lender to accept the borrower's tender of money within 20 days after tender.  By placing time limits on the lender's obligations, but no time limits on the borrower's obligation to repay the principal balance, and by requiring that the lender refund finance charges and terminate the security interest first, Regulation Z effectuates rescission in a timely fashion, recognizing that the borrower needs the time and the means to obtain alternative financing.

Because the requirement that the lender terminate the security interest merely serves to provide a means for the rescinding borrower to obtain alternative financing, the voiding of the security interest is

appropriately characterized as a procedural step in the rescission process, not substantive or punitive

relief.  Given that it is a merely part of the rescission procedures,

§ 1635(b) permits the court to condition or modify the voiding of the security interest, stating  "[t]he

procedures prescribed by this subsection shall apply except when otherwise ordered by a court."[49]

Notably, in 1980, Congress amended § 1635 by adding this last sentence to subsection (b), specifically

giving the courts authority to change at least part of what happens when the borrower rescinds.[50]  But

even prior to the statute's amendment, the majority of circuit courts that addressed this issue permitted

judicial modification of the statutory rescission process.[51]  The Tenth Circuit had previously held in

*Rachbach v. Cogswell*[52] "that courts can alter the TILA's statutory scheme because rescission is an

equitable remedy."[53]

     Merriman asks the Court to reverse the ultimate conclusion reached by the bankruptcy  court

and order that Beneficial's lien be voided, effectively allowing her to pay nothing or a very small portion

of the post-rescission amount calculated by the bankruptcy court.  Although the Tenth Circuit has not

ruled on this precise issue, the majority of courts addressing this issue have held that the TILA

authorizes them to modify the procedure for effecting the avoidance of a lender's mortgage on the

----

[49]15 U.S.C. § 1635(b).

[50]*See* TILA Simplification Act, § 612(a)(4), 1980 U.S.C.C.A.N. (94 Stat.) at 175.

[51]*Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980); *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir. 1976); *Rachbach v. Cogswell*, 547 F.2d 502 (10th Cir. 1976); *LaGrone v. Johnson*, 534 F.2d 1360 (9th Cir. 1976). *Contra Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (refusing to permit judicial modification).

[52]847 F.2d at 502.

[53] *Id*. at 505.

tender of the post-rescission amount by the borrower.[54]  In *Quenzer III*,  Judge Crow concluded,

based on the analysis in *Rachbach*, as well as the statutory revisions to the TILA and Regulation Z, that

"although a debtor's tender back is not mandated as a prerequisite to rescission, it may be an

appropriate condition attached thereto under certain circumstances because of the equitable nature [of]

that statutory remedy."[55]  Since then, bankruptcy courts in Kansas and Oklahoma have followed

*Quenzer III* in concluding that courts do have equitable discretion to modify rescission under the

TILA.[56]

Indeed, in the context of bankruptcy, where the borrower seeks to compromise or discharge

the debt on the rescinded loan, judicial modification of the rescission process is well justified.  At the

time Merriman gave notice of rescission, the Federal Reserve Board of Governors ("FRB") Official

Staff Interpretation of Regulation Z provided, "The procedures outlined in § 226.23(d)(2) and (3) may

be modified by a court.  For example, when a consumer is in bankruptcy  proceedings and prohibited

from returning anything to the creditor, or when the equities dictate, a modification might be made."[57]

And since the parties submitted their briefs in this appeal, the FRB has made "technical

revisions" to its commentary with respect to § 226.23(d)(4), effective April 1, 2004.  The revised

Official Staff Commentary for Regulation Z § 226.23(d)(4) reads as follows:

---

[54]*See, e.g., Yamamoto*, 329 F.3d at 1167; *Williams*, 968 F.3d at 1140;  *FDIC v. Hughes Development Co.*, 938 F.2d 889, 890 (8th Cir. 1991), *cert. denied*, 502 U.S. 1099 (1992); *Quenzer III*, 288 B.R. at 888 (citing Black's Law Dictionary on Westlaw (Garner, Ed., 7th ed. 1999), defining "procedure" as "1. A specific method or course of action");

[55]288 B.R. at 888 (citing *Rachbach*, 847 F.2d at 505).

[56]*In re Stanley*, 315 B.R. at 602; *In re Webster*, 300 B.R. 787 (Bankr. W.D. Okla. 2003).

[57]12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(4).

1.  <u>Modifications</u>.  The procedures outlined in § 226.23(d)(2) and (3) may be modified by a court.  For example, when a consumer is in bankruptcy proceedings and prohibited from returning anything to the creditor, or when the equities dictate, a modification might be made.  **The sequence of procedures under § 226.23(d)(2) and (3), or a court's modification of those procedures under § 226.23(d)(4), does not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly**.  Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.[58]

This revised Official Staff Interpretation, which the FRB deems "technical," does not correspond to any amendment of the regulation itself.[59]  The Court notes that while commentators generally supported the revision, industry and consumer groups asked the FRB staff to address an issue not raised by the proposal, namely, whether a court could condition rescission and voiding of the lender's security interest on tender by the borrower.[60]  Comment 23(d)(4) did not address this issue, and instead clarifies only that the sequence of procedures under § 226.23(d)(2) and (3), or a court's modifications of those procedures, under (d)(4), does not affect consumers' substantive right to rescind.[61]

When an agency charged with enforcing a statute has promulgated a regulation that adopts a permissible construction of the statute, a court must defer to that interpretation and not impose its

---

[58]*Id*. (2004) (emphasis added).

[59]69 F.R. 16769-03 (March 31, 2004).

[60]*Id.* at 16772.

[61]Significantly, the new language as originally proposed read: "The consumer's substantive right to rescind under § 226.23(a)(1) and § 226.23(d)(1) is not affected by the procedures referred to in § 226.23(d)(2) and (3), or the modification of those procedures by a court." 68 F.R. 68799 (proposed December 10, 2003).  This version, which might support Merriman's position, was *not* the one ultimately adopted.

23

own.[62]  The Supreme Court has indicated this rule is especially strong in the context of the TILA and

Regulation Z, where even official staff interpretations of the statute and regulation should control unless

shown to be irrational.[63]  Regulation Z § 226.23(d)(1) recognizes the statutory mandate that a lender's

security interest is void when a borrower rescinds a loan transaction.  Subparagraph (d)(4) restates the

power given to courts under § 1635(b) to modify the statutory procedures outlined in subparagraphs

(d)(2) and (d)(3), including the power to modify the procedure to effect the rescission.  Rather than

being in conflict with TILA § 1635(b), Regulation Z § 226.23(d)(4) supports the court's authority to

modify the rescission process, including allowing the lender to retain its security interest pending tender

of the loan proceeds by the borrower.  This manner of modification is especially relevant in the

bankruptcy  context.  The Court finds nothing irrational about Regulation Z § 226.23(d)(4).[64]

Moreover, the legislative history regarding the amendment to § 1635(b) supports the

modification of the rescission process in the context of a bankruptcy case, noting:

> Upon application by the consumer or the creditor, a court is authorized
> to modify this section's procedures where appropriate.  **For example,
> a court might use this discretion in a situation where a consumer
> in bankruptcy or wage earner proceedings is prohibited from
> returning the property.**  The committee expects that the courts, **at
> any time during the rescission process**, may impose equitable
> conditions to insure that the consumer meets his obligations after the
> creditor has performed his obligations as required under the Act.[65]

---

[62]*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-844 (1984).

[63]*Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-70 (1980); *Davison v. Bank One Home Loan Serv.*, No. 01-2511-KHV, 2003 WL 124542, at *5 (D. Kan. Jan. 13, 2003).

[64]*Cf. In re Stanley*, 315 B.R. at  615-16 (concluding that Regulation Z § 226.23(d)(4) is manifestly contrary to TILA § 1635(b) and an irrational construction that did not bind that court).

[65]S. Rep. No. 96-368 at 29 (1980) (emphasis added).

As one court noted, the legislative history's reference to bankruptcy is significant and illustrates Congress intended to allow courts to condition the voiding of a lien or security interest on payment by the debtor:

> Had Congress intended otherwise, there would be no reason to mention bankruptcy, as a creditor's secured interest in a debtor's homestead would be void upon rescission, relegating the debtor's remaining obligations to an unsecured, often dischargeable status. The net effect, then, would be that a debtor receives the entire benefit of the credit transaction, often substantial sums of money or what amounts to a free house, while the creditor receives nothing, which would be contrary to the purpose of rescission.[66]

In this case, Merriman is attempting to use an equitable remedy to create a legal right to effectively strip Beneficial's mortgage lien, a right she is not accorded under bankruptcy law.[67]  Thus, the bankruptcy court Order requiring Merriman to satisfy her reciprocal tender obligation prior to release of Beneficial's mortgage is precisely the type of equitable condition contemplated by Congress. To hold otherwise would disproportionately punish Beneficial for a technical violation of the TILA while giving Merriman a windfall in excess of $20,000.

Moreover, in this case, in *Quenzer III*, and in the majority of cases allowing the rescission process to be modified or conditioned, rescission was initiated after the initial three-day period--often years after.  That circumstance factors highly in the majority decisions, and clearly alters the apparent equities between the parties.  As the court stated in *Quenzer III*,

---

[66]*In re Stanley*, 315 B.R. at 615 (citing *In re Webster*, 300 B.R. at 804 (rejecting debtor's "free house" theory)).

[67]11 U.S.C. § 1322(b)(2) (debtor's Chapter 13 plan may not modify rights of a holder of a security interest in debtor's principal residence).

> This court cannot accept the proposition that strict enforcement of TILA justifies rendering a debt in the amount at issue here [$48,000 or more] unpaid and completely unsecured, given the passage of time and other circumstances present.  Even though the defendant violated TILA, automatically relegating its entire claim to unsecured status under these circumstances would be completely inequitable and would exact a penalty entirely disproportionate to its offense.[68]

In *Quenzer III*, the court recognized that courts should analyze all the surrounding circumstances in determining the appropriate effect of the borrower's decision to rescind rather than disproportionately punishing the lender within the scope of remedies otherwise provided in the TILA. In this case, the bankruptcy court did precisely that by preserving the rights of Merriman and Beneficial with respect to rescission under the TILA and Regulation Z.  The bankruptcy  court's exercise of equitable authority means that Merriman can exercise her rescission rights without being confronted with the dilemma of a lump sum payment to the lender that would otherwise be due under the TILA.  It also avoids Merriman receiving the so-called "free house" benefit, while Beneficial receives little or nothing.  Instead, the bankruptcy court structured repayment after adjustment of Beneficial's claim, preserving the lender's expectation of being paid the reciprocal tender by allowing Beneficial to retain its mortgage lien.

### Conclusion

The Court concludes that Beneficial's mortgage lien was not automatically void upon Merriman's giving notice of rescission to Beneficial.  In so ruling, the Court joins the majority of courts in concluding that TILA § 1635(b) and Regulation Z § 226.23(d)(4) authorize it to modify the

---

[68]288 B.R. at 889.

procedure for rescission by conditioning the avoidance of a lender's mortgage lien on tender of the post-rescission amount by the borrower.  This comports with Congressional intent that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act."[69]  The bankruptcy court's decision to allow Beneficial to retain its mortgage lien subject to payment of Merriman's post-rescission obligation, as calculated by the bankruptcy  court, is affirmed.[70]

       **IT IS THEREFORE ORDERED BY THE COURT** that the Order of the bankruptcy court dated May 28, 2003, is AFFIRMED.

       IT IS SO ORDERED.

       Dated this  7th  day of September 2005.

                                  S/ Julie A. Robinson
                                  Julie A. Robinson
                                  United States District Judge

---

[69]S. Rep. No. 96-368, at 29 (1980).

[70]Merriman asks that the Court certify the question for immediate appeal to the Tenth Circuit pursuant to Fed. R. Civ. P. 54(b).  Because the Court affirms the decision of the bankruptcy court, such certification, assuming it is appropriate, is not necessary.